OPINION
This case is before us on the appeal of Joshua Pyles from a finding of delinquency for two counts of rape. Following the finding, Pyles was committed to the legal custody of the Department of Youth Services for one year. However, the commitment was suspended, and Pyles was placed on probation, with some conditions, including counseling. Pyles filed a timely notice of appeal and raises the following assignments of error:
 I. This (meaning the Juvenile) court's non-compliance with Juvenile Rule 29(B)(2) in failing to advise Joshua Pyles of his rights constitutes reversible error.
 II. Joshua Pyles was denied his constitutional and statutory right to a compulsory process when the court refused to consider his motion to depose a necessary and material witness.
 III. Joshua was denied his constitutional right to due process of law when the trial court failed to record the testimony of one of the State's witnesses, thereby not making her testimony available within the transcripts of this case.
After considering the assignments of error, we find them without merit. Accordingly, the trial court judgment will be affirmed.
 I
As we mentioned, the first assignment of error focuses on the trial court's alleged failure to comply with the procedures in Juv. R. 29(B)(2) for adjudicatory hearings. According to Rule 29(B)(2), the court must do the following things at the beginning of an adjudicatory hearing:
 "(1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance; (2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv. R. 30 where the complaint alleges that a child fifteen years of age or over is delinquent by conduct that would constitute a felony if committed by an adult; (3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel; (4) Appoint counsel for any unrepresented party under Juv. R. 4(A) who does not waive the right to counsel; (5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent."
The original delinquency complaint in this case alleged that Pyles had committed two counts of gross imposition. Shortly after the complaint was filed, the trial court held an initial hearing and explained Pyles' rights in detail. Our review of the record reveals that the explanation fully complied with Juv. R. 29(B).
Pyles appeared at the initial hearing without counsel. After the court explained Pyles' rights, including the right to counsel, the court entered a denial of charges and set the matter for a preliminary conference. In the meantime, Pyles was supposed to complete paperwork so that he could qualify for representation from the Public Defender's Office.
Pyles apparently qualified, as an attorney from the Public Defender's Office then appeared in the proceedings on Pyles' behalf. Subsequently, at the preliminary conference, the court set an adjudicatory hearing for June 26, 2001. However, the State filed an amended complaint on June 8, 2001, changing the charges to rape, rather than gross sexual imposition. As a result, Pyles' attorney filed a motion for continuance, which was granted.
Ultimately, the adjudicatory hearing was held on September 24, 2001. Although the court did not repeat the Juv. R. 29(B)(2) explanation at this hearing, both sides acknowledged that the rape counts were being tried. Furthermore, a full adversarial trial was conducted, and Pyles had an opportunity to present and confront witnesses, etc. Under the circumstances, and given the earlier detailed explanation of Pyles' rights, we believe the trial court substantially complied with Juv. R. 29(B).
To support the alleged error, Pyles relies on decisions from our district that have reversed juvenile courts for failing to comply with Juv. R. 29(B). For example, in the case of In re Doyle (1997),122 Ohio App.3d 767, we reversed a judgment where the magistrate failed to adequately inform a juvenile of her rights. In Doyle, the juvenile appeared without counsel at the arraignment, waived her right to counsel, and admitted the complaint. Id. at 769-70. We found that the process was defective because she was not adequately informed of her rights. Id. at 772-73. Similarly, in the case of In re Hendrickson (1996),114 Ohio App.3d 290, we reversed an adjudication of delinquency where a juvenile admitted to aggravated burglary and appeared for sentencing without an attorney. We found that Juv. R. 29(D) was analogous to Crim. R. 11(C)(2), and required juvenile courts to substantially comply with the rule before accepting admissions. Id. at 292-93. In particular, we were troubled by the trial court's failure to give the juvenile any information about potential sentences. In this regard, we commented that:
 "[n]either party cites, nor can this court locate, any cases construing the term `consequences' as used in Juv. R. 29(D). In our view, however, the potential for commitment to the Ohio Department of Youth Services for a period of one to six years is a significant consequence that the judge should have mentioned to Hendrickson. Indeed, in the eyes of a fifteen-year-old who is unrepresented by counsel, the possibility of a lengthy commitment well may be the most important consequence imaginable. Consequently, we hold that Juv. R. 29(D)(1) and the rudiments of due process required the trial court to apprise Hendrickson, at least briefly, of its dispositional options." Id. at 293.
Unlike the present case, Doyle and Hendrickson involved unrepresented juveniles who made admissions under Juv. R. 29(D). Nonetheless, failure to substantially comply with Juv. R. 29(B) may also merit reversal. See, e.g., In re Lander (June 26, 2000), Butler App. No. CA99-05-096, 2000 WL 819775, *5, and State v. Blayblock (June 5, 1981), Montgomery App. No. 6881, 1981 WL 2818, *2. However, reversing in the context of the present case would elevate form over substance. As the trial court noted, Pyles was thoroughly informed of all relevant matters, including possible dispositions if he were found delinquent. In particular, the court discussed the potential for commitment to the Department of Youth Services for a minimum period of six months. In this regard, the court noted that the maximum commitment period would be until Pyles' 21st birthday. The court also discussed the fact that two counts were pending, and could be imposed consecutively. The court told Pyles that if consecutive sentences were given, the minimum confinement would be one year.
In his reply brief, Pyles concedes that he may have received an adequate Juv. R. 29(B) explanation at the initial hearing. He claims, however, that the alleged rape offenses involved significant differences in minimum sentences. The trial court rejected this argument because of the Juvenile Court's authority over minimum sentences. Moreover, the court relied on the fact that the maximum sentence for either charge was the same, i.e., Pyles could be held no longer than his 21st birthday, whether he was charged with gross sexual imposition or with rape. This is correct. See R.C. 2151.355(A)(4) and (5)(a) (discussing minimum and maximum sentences applicable to gross sexual imposition and rape. These code sections were in effect at the time of Pyles' conviction, but have subsequently been repealed. Similar sentencing provisions can now be found in R.C. 2152.16).
We agree with the trial court's reasoning about the explanations that were given. The juvenile in this case received a full explanation of his rights, and a trial on the issues. He was also represented by counsel at all pertinent stages of the proceeding and made no admissions implicating Juv. R. 29(D). Under the circumstances, the trial court substantially complied with Juv. R. 29(B). Accordingly, the first assignment of error is overruled.
 II
In the second assignment of error, Pyles contends that he was denied both constitutional and statutory rights to compulsory process when the trial court refused to consider his motion to depose a necessary and material witness. The witness in question was the pastor of a church that Pyles and the victim both attended. The relevant factual background of this issue is as follows. Pyles and the victim, A.D., were good friends for three years. They "hung around" with the same group of friends and attended the same church.
At the time of the alleged rape, A.D. was "unofficially" dating Pyles' friend, Ryan. During the week before the rape incident, Pyles, Ryan, A.D., and some other friends went skinny-dipping twice at Eastwood Metro Lake Park. On these occasions, most people, including A.D. and Pyles, were completely nude.
The alleged rape took place on July 6, 2000. The night before, Pyles and A.D. were at church and engaged in some physical horseplay. A.D. claimed they were just joking. However, she did admit that Pyles kissed her that evening, and that she kissed him back.
On the morning of July 6, Pyles called A.D. and invited her to go to Eastwood Metro Lake Park that evening. A.D. arrived that night at about 9:00 p.m. at a Day's Inn parking lot, which was a mile or two from the park. Although A.D. expected Ryan and another friend, Emily, to be there, Pyles was the only one who showed up. After Pyles told A.D. that the other two could not make it, A.D. and Pyles walked to the park. They then walked around the trails in the park, talking, for about 45 minutes. By that time, they had arrived at the personal watercraft area, and Pyles suggested that they go swimming. At this point, the two accounts diverge. A.D.'s story was that Pyles began kissing her after they got in the water, and "fingered" her twice very hard, against her will. Pyles did not deny that sexual contact took place. However, he claimed it was all consensual. After this series of events occurred, A.D. and Pyles got out of the water, dressed, and walked back to the Days Inn. They then left in separate cars.
About two days after the incident, the youth pastor at the church (Brian Lock) called Pyles into his office. Lock said he needed to talk to Pyles about something serious. Pyles learned then that A.D. was upset about what had happened. A.D. testified that she talked to Lock in confidence about the incident, three or four times.
On June 26, 2001, Pyles filed a motion, asking for a court order to depose Lock. In the motion, Pyles alleged that Lock was a material witness and would be out of the country from July 14 through July 24, 2001. At the time the motion was filed, the adjudicatory hearing was set for July 24. In response to the motion, the State said it would not object if Lock testified soon after the July 24, 2001 adjudicatory hearing. In other words, the State was willing to accommodate Pyles, and suggested an alternative that would still allow the hearing to take place as planned.
The trial court did not rule on the motion before the July 24, 2001 hearing. That hearing apparently did not go forward as scheduled, even though no formal entry of continuance is in the court file. Subsequently, on July 26, 2001, Pyles filed a motion to dismiss the complaint, claiming that the court's failure to rule on the motion had effectively deprived him of the right of compulsory process to secure Lock's attendance. In this regard, Pyles' attorney now said he had learned on June 25, 2001, that Lock would be leaving Ohio indefinitely on July 14, 2001, to live in Japan. Consequently, Lock would be out of the jurisdiction indefinitely and could no longer be deposed. Notably, the attorney would have been aware of these facts when the motion for an order to depose was filed.
The trial court did not rule on the motion to dismiss before the adjudicatory hearing, which was held on September 24, 2001. At the adjudicatory hearing, the defense renewed the motion to dismiss, and proffered Lock's testimony. According to the defense, Lock would have testified that A.D. told him a story that was somewhat consistent with what she said at trial. However, Lock would also have testified that A.D. told Pyles to stop, and that Pyles did stop when she asked.
In rejecting the motion to dismiss, the magistrate found that Lock was not a material witness. The basis for this finding was Pyles' own testimony, i.e., Pyles testified that A.D. never asked him to stop touching her. Consequently, the magistrate did not feel that Lock's testimony would add anything to the defense.
In contending that the trial court erred, Pyles argues first that Lock was a necessary and material witness because the State itself served Lock with a subpoena for the July 24, 2001 adjudicatory hearing. Pyles also says that the court was required to consider the motion and erred by failing to even rule on the matter.
As a preliminary point, we note that under Juv. R. 25, the court "upon good cause shown may grant authority to take the deposition of a party or other person upon such terms and conditions and in such manner as the court may fix." The rule does not define "good cause," but the Twelfth District Court of Appeals has applied (without necessarily accepting) the standards in Crim. R. 15 to decide if good cause existed for taking depositions of alibi witnesses in a juvenile case. See In re Vaughn
(Aug. 13, 1990), Butler App. No. CA89-11-162, 1990 WL 116936, *3-4. This appears to be an appropriate approach. Compare In re Hale, Belmont App. No. 01 BA 21, 2002-Ohio-1153, ¶ 18-21 (applying both the Juvenile Rules and the Ohio Rules of Civil Procedure to evaluate good cause for taking a deposition in a case involving termination of parental rights). The basis for applying the Rules of Civil or Criminal Procedure can be found in Juv. R. 45(B). In this regard, Juv. R. 45(B) provides that if the Juvenile Rules do not prescribe any particular procedure, the court shall proceed in any lawful manner not inconsistent with the Juvenile Rules, or local rule. Id. at ¶ 18.
Pyles contends that the Rules of Criminal Procedure do not apply because Crim. R. 1(C) prohibits their application to juvenile cases. However, the rule is actually less restrictive than Pyles implies. In this regard, Crim. R. 1(C) says that the Rules of Criminal Procedure, "to the extent that specific procedure is provided by other rules of the Supreme Court or to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure * * * (5) in juvenile proceedings against a child * * *." While the Juvenile Rules provide specific procedures for certain things, they do not outline a particular procedure for depositions, beyond stating that depositions may be taken for good cause. Given the permissive statement in Juv. R. 45(B), and the fact the Crim. R. 15 is not inconsistent with the Juvenile Rules, we see no reason why Crim. R. 15 should not be applied to the issue of depositions in juvenile cases. We note that Pyles, himself, even cited Crim. R. 15 in the trial court when he filed the motion to depose Pastor Lock.
Under Crim. R. 15(A),
 "[i]f it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing, and if it further appears that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place."
Crim. R. 15(F) also permits depositions to be used at trial if witnesses are unavailable, unless the party offering the depositions has procured their absence.
In State v. Mayhew (1991), 71 Ohio App.3d 622, the defendant claimed that the trial court erred in forcing him to rest without presenting the testimony of a witness who had been subpoenaed, but left the jurisdiction before trial. However, the Fourth District Court of Appeals did not agree that this was error. In particular, the Fourth District noted that the defendant never informed the trial court that the witness was going to leave the jurisdiction. The Fourth District stressed that if the trial court had been informed, it could have taken steps to prevent the witness from leaving, or could have used the Uniform Attendance of Witnesses Act, R.C. 2939.25 et. seq., to secure his presence.
Like the defendant in Mayhew, Pyles failed to properly inform the trial court that the potential witness was leaving the jurisdiction. Specifically, Pyles' motion said only that Lock would be out of the country from July 14, through July 24, 2001. A reasonable construction of this statement is that Lock would return on July 24, and would be available after that date. In fact, this was the interpretation the State made when it filed a memorandum responding to the motion to depose. Notably, after learning of the State's interpretation, Pyles never alerted either the State or the court to the mistake. Instead, Pyles waited until two days after Lock left the county before filing a motion to dismiss for failure to provide compulsory process. And, as we stressed above, Pyles' attorney knew when the original motion to depose was filed that the witness intended to indefinitely leave the jurisdiction. If, in fact, the witness was critical, Pyles should have taken steps to properly inform the court. Accordingly, the trial court did not err in failing to act on Pyles' motion. The court could well have believed that no action was needed. Given these facts, the trial court acted correctly in denying the motion to dismiss. In view of the preceding discussion, the second assignment of error is without merit and is overruled.
 III
In the final assignment of error, Pyles claims that he was denied his constitutional right to due process because the trial court failed to record the testimony of State witness, Allison Stollar. Pyles apparently objected during Stollar's testimony and also made an oral proffer, and feels he cannot receive a full and fair appellate review because this part of the transcript is missing.
An appellant has the burden of showing error by referring to matters in the record. State v. Gray (1993), 85 Ohio App.3d 165, 169, citing Statev. Skaggs (1978), 53 Ohio St.2d 162. When parts of the record are unavailable, litigants may use the procedures in App.R. 9(C) and (D) to recreate the record. Since Pyles made no attempt to use these procedures, we must affirm the lower court's judgment as to the assignments of error that are based on the missing part of the trial transcript. Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,200. We also note that Pyles failed to even identify the alleged error that occurred during the missing testimony. As a result, we simply have nothing to review.
Accordingly, the third assignment of error is also without merit and is overruled.
Based on the preceding discussion, all three assignments of error are overruled, and the judgment of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.